[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11733

_____

SERENDIPITY AT SEA, LLC,

                                                            Plaintiff-Appellant,

*versus*

UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING
TO POLICY NUMBER 187581,

                                                            Defendant-Appellee,

USI INSURANCE SERVICES, LLC,

                                                            Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cv-60520-RAR

_____

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM, and MARCUS,
Circuit Judges.

MARCUS, Circuit Judge:

This appeal arises out of an insurance dispute involving a
yacht, the Serendipity, that was destroyed by Hurricane Dorian, a
Category 5 storm, that slammed into Great Abaco Island in the Ba-
hamas. Serendipity at Sea, LLC ("Serendipity, LLC"), a holding
company created by Mikael Sean Oakley and Jacqueline English
("the Oakleys") to manage the Serendipity, sued Underwriters at
Lloyd's of London Subscribing to Policy Number 187581
("Lloyd's") for breach of contract after Lloyd's denied the Oakleys'
insurance claim for the damage Hurricane Dorian caused to the
Serendipity. In denying that it had breached the contract, Lloyd's
argued that it was not liable because Serendipity, LLC did not em-
ploy a full-time licensed captain in violation of the policy's Captain
Warranty, and that the breach increased the hazard to the yacht
because a licensed captain would have operated the vessel back to
Florida when Hurricane Dorian formed and was forecast to hit the
Bahamas.

The district court granted summary judgment in favor of Lloyd's under Federal Rule of Civil Procedure 56(f). It found that the Captain Warranty was unambiguous; that Serendipity, LLC breached the agreement by failing to hire a full-time licensed captain; and that the breach increased the hazard posed to the Serendipity based on the purportedly undisputed testimony of Captain Thomas Danti, an expert hired by Lloyd's.

While we agree with the district court's conclusion that Serendipity, LLC breached the Captain Warranty, a disputed question of material fact remains about whether the breach increased the hazard posed to the vessel. Thus, we reverse the district court's grant of summary judgment in favor of Lloyd's and remand the case to the district court for further proceedings consistent with this opinion.

## I.

The relevant facts -- for purposes of summary judgment -- are these. The Oakleys own a 61-foot Viking Princess yacht named the Serendipity, which they manage through their holding company, Serendipity, LLC. The Oakleys insured the yacht through a SeaWave Yacht Insurance Policy (the "Policy"). They used an insurance broker, USI Insurance Services, LLC, to secure the Policy, which was underwritten by Lloyd's.

The Policy contained two warranties: a Captain Warranty and a Crew Warranty. It is the Parties' disagreement over how to interpret the Captain Warranty that brought them to court. The

Captain Warranty in effect in 2015 "[w]arranted a full time licensed captain is employed for the maintenance and care of the vessel and is aboard while the vessel is underway. Michael [sic] Sean Oakley is permitted to operate the vessel without the Captain aboard." The Captain Warranty in effect in each subsequent renewal period (and when the loss occurred) omitted the second line; it only "[w]arranted a full time licensed captain is employed for the maintenance and care of the vessel and is aboard while underway." A separate provision of the Policy also stated that "[i]t is agreed that the person in charge of and in control of *Your Boat* while making way or under way shall only be *You* or others as may be permitted by the terms and conditions of this *Contract*."

Despite the slight variations of the Captain Warranty, all Parties agree that Oakley was allowed to drive the boat without a captain present. They disagree, however, about what the Captain Warranty required of Serendipity, LLC when the vessel was not underway. As a preview: Serendipity, LLC believed it only needed to have a captain "on call" to assist as needed with the vessel, while Lloyd's believed that the Policy required Serendipity, LLC to hire a captain to care for the Serendipity "full time."

The Policy also contained a Crew Warranty, but it proved far less controversial. It said only that "[c]overage is provided for [1] full time paid crew." It is relevant for our purposes because the Oakleys believed that the Captain Warranty was intended to function the same as the Crew Warranty: Oakley said in his deposition

that he thought the Captain Warranty was intended to protect the Oakleys from liability if Captain Connelly "slipped and fell or hurt" himself.  In other words, Oakley understood the warranty as intended "to protect any captain that was on board operating the vessel," providing additional coverage like the Crew Warranty did.

Because of the Captain Warranty, the Oakleys were required to list a "captain of the vessel" on their insurance application.  And so they listed William Scott Connelly ("Captain Connelly"), a family friend.  But in addition to being a friend of the Oakleys, Captain Connelly is also a retired captain.  While he used to operate marine vessels as his main profession, since his retirement he no longer "[got] to captain vessels on a regular basis, as [he] once did."  But, as he put it in an affidavit, he was "always available" to help the Oakleys when they needed him.

On or about July 27, 2019, Oakley drove the Serendipity from Cape Canaveral, Florida to Great Abaco Island in the Bahamas.  Two friends joined him for the voyage, which took about eleven hours.  The month prior, Oakley had made significant and expensive improvements to the Serendipity, to the tune of $100,000 or so.  He received a certificate of insurance from their broker, USI, in order to make the repairs, and he told USI about his plan to take the Serendipity to the Bahamas at that time.

When the Serendipity arrived in the Bahamas, Oakley and a licensed captain, Captain Trevor Lightbourne, docked the yacht behind a home known as the Pink Paradise.  Oakley also updated

the cameras around the dock to a high-tech brand. Oakley returned home to Florida in early August. While he was gone, Captain Lightbourne and another licensed captain, Captain Stanley McIntosh, checked in on the Serendipity.

All was well for a few weeks. But on August 23, 2019, a storm started brewing in the Atlantic Ocean. The same day that the storm was announced, Oakley consulted with Captains Lightbourne and McIntosh and determined that the safest place for the Serendipity to weather the storm, which was predicted to hit Central Florida, was in the Bahamas. Captains Lightbourne and McIntosh secured the vessel to the dock, with Oakley directing the preparation using the cameras.

By August 26, 2019, the storm -- now named Dorian -- was forecast to hit Puerto Rico as a tropical storm. It was a particularly erratic storm, however, and the forecast changed quickly and frequently. On August 29, 2019, Dorian was predicted to bypass the Bahamas and hit Central Florida directly. But forecasters remained uncertain about when and where exactly the storm would make landfall. On the afternoon of August 30, 2019, Dorian became a Category 3 hurricane. Only seven hours later, it strengthened into a devasting Category 5 hurricane. It made landfall on Great Abaco, where the Serendipity was docked. The Serendipity was destroyed.

Serendipity, LLC subsequently filed an insurance claim for the damage. But its claim was denied on February 19, 2020. In the

denial letter, a representative of Lloyd's explained that the Policy "warranted that a licensed captain is employed and is aboard while the vessel is underway," but that Oakley "moved the boat to the Bahamas and there was no licensed Captain aboard for that voyage."

Serendipity, LLC sued Lloyd's in Florida state court on February 14, 2020. Lloyd's removed the matter to the United States District Court for the Southern District of Florida asserting diversity jurisdiction on March 10, 2020. Serendipity, LLC's initial complaint raised two counts against Lloyd's for breach of contract and bad faith. Serendipity, LLC has since amended its complaint several times. The operative complaint, the Fourth Amended Complaint, brings one count against Lloyd's for breach of contract, and two counts against the insurance broker, USI, for breach of fiduciary duty and negligence.

The Parties filed cross motions for summary judgment, and the district court denied them all following a Report and Recommendation from a magistrate judge. But at the same time it denied the cross motions for summary judgment, the district court directed Serendipity, LLC to file a brief addressing "the issue of whether Plaintiff's breach of the Captain Warranty 'increased the hazard within the control of the insured,' Fla. Stat. § 627.409(2)" in accordance with Federal Rule of Civil Procedure 56(f). Serendipity, LLC filed its response on April 20, 2021 and Lloyd's replied the next day. Serendipity, LLC largely ignored the instructions of the

district court and spent much of its brief addressing breach. To the extent the brief addressed the hazard issue, it mainly addressed it in relation to breach. That is, Serendipity, LLC argued that an "increased risk" required a "material breach" and because "Mr. Oakley was authorized to operate the boat without a captain on board . . . his bringing the boat to the Bahamas without incident, was authorized and not a breach." Serendipity, LLC added, however, that "[t]he vessel was not in jeopardy with Mr. Oakley as the captain" because Oakley "was highly experienced operating the subject vessel and similar vessels" and "had extensive experience navigating to and from and within the Bahamas."

For its part, Lloyd's offered an expert, Captain Danti, to opine on the hazard issue. Based on Captain Danti's testimony, the district court granted summary judgment in favor of Lloyd's under Federal Rule of Civil Procedure 56(f). The district court concluded that Serendipity, LLC had "produced no evidence to rebut this testimony, and thus the record is clear that [Serendipity, LLC]'s breach of the Captain Warranty increased the hazard within the control of the insured." And so it entered final judgment in favor of Lloyd's.

This timely appeal followed.

## II.

### A.

We carried one jurisdictional issue with this case: "[W]hether there is a final and appealable order in light of the voluntarily stipulated dismissal without prejudice, which does not appear to have been signed by [Lloyd's]." We conclude that there is. Serendipity, LLC's claims against USI were properly dismissed under Federal Rule of Civil Procedure 41(a)(2). That rule provides, in relevant part, that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). While the Parties cited Federal Rule of Civil Procedure 41(a)(1)(A)(ii) in their Joint Stipulation, they appeared to have contemplated additional action by the district court, consistent with Rule 41(a)(2), and the district court did take further action by entering an order dismissing USI. The dismissal of USI met the requirements of Rule 41(a)(2), and the only claim remaining in this matter when the district court entered summary judgment in favor of Lloyd's was Serendipity, LLC's breach of contract claim against Lloyd's. Accordingly, Serendipity's appeal of that decision provides us with a final decision from the district court to review. *See* 28 U.S.C. § 1291; *see also World Fuel Corp. v. Geithner*, 568 F.3d 1345, 1348 (11th Cir. 2009) (explaining that a final decision is "one that ends the litigation on the merits and leaves nothing for the court to do but execute its judgment" (quotation marks and citation omitted)).

## B.

We review the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010). A motion for summary judgment is properly granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022).

On appeal, Serendipity, LLC argues that the Captain Warranty is ambiguous and vague, and that under the reading of the warranty most favorable to it -- the reading that we are required to adopt under binding Florida law, *see Roberson v. United Servs. Auto. Ass'n*, 330 So. 2d 745, 746 (Fla. 1st DCA 1976) -- there was no breach. Serendipity, LLC also argues that even if there was a breach, the breach did not justify denial of coverage under the Policy because it did not "increase the hazard" posed to the Serendipity by Hurricane Dorian. If the breach did not "increase the hazard," the Policy remained enforceable and Lloyd's was required to pay, absent some other breach or excuse for nonpayment.

Our first task, then, is to determine whether the Captain Warranty is ambiguous. And there is no better place to begin than with the language of the warranty. The warranty said, in its entirety, that the policy "[w]arranted a full time licensed captain is employed for the maintenance and care of the vessel and is aboard while underway." Serendipity, LLC claims this language is vague

and ambiguous for a number of reasons, which it presented as a list of hypothetical questions to the district court (*e.g.*, "what exactly is a 'full time licensed captain,'" "what is considered 'full time,'" "is the captain employed 'full time' if he is only aboard while the vessel is 'underway'"?).

Under Florida law, which we are *Erie*-bound to apply in this diversity action, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "[a]n insurance contract is ambiguous if it is susceptible to two or more reasonable interpretations that can fairly be made." *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993); *see also Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004) ("Policy language is considered to be ambiguous . . . if the language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." (quotation marks and citation omitted)). "In interpreting an insurance contract, we are bound by the plain meaning of the contract's text." *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569 (Fla. 2011).

"If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." *Travelers*, 889 So. 2d at 785. But a provision is not ambiguous "simply because it is complex or requires analysis." *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010) (citation omitted). And courts should not "put a strained and

unnatural construction on the terms of a policy." *Southern-Owners Ins. Co. v. Eason Rhodes & Assocs., LLC*, 872 F.3d 1161, 1164 (11th Cir. 2017) (citation omitted). If there is genuine ambiguity, however, "[i]nsurance policies are construed liberally in favor of the insured and strictly against the insurer." *Roberson*, 330 So. 2d at 746.

We turn now to the interpretations of the Captain Warranty that Serendipity, LLC offers. First, Serendipity, LLC's most preferred interpretation: that the Captain Warranty provided additional coverage to the Oakleys in the event a hired captain was injured while aboard the vessel. This interpretation is patently unreasonable because it is belied by the text of the warranty. There is no reading of "[w]arranted a full time licensed captain is employed for the maintenance and care of the vessel and is aboard while underway" that expands coverage for personal injuries suffered by a captain on the vessel. Indeed, there is no reading that does not require Serendipity, LLC to hire a full-time licensed captain in some capacity. And we cannot "put a strained and unnatural construction" on the warranty to read it this way. *See Southern-Owners*, 872 F.3d at 1164. Had the Captain Warranty said the same thing the Crew Warranty says -- "[c]overage is provided for [1] full time paid crew" -- this argument may have held more water. But as it stands, this argument fails under the plain text of the warranty.

Nevertheless, we are persuaded that the Captain Warranty is otherwise ambiguous. We say this because there is more than one reasonable way to read the plain language of its text. *See Dahl-*

*Eimers*, 986 F.2d at 1382 ("Ordinary rules of construction require us, first, to assess the natural or plain meaning of the policy language."). The Captain Warranty is ambiguous about what it means by the phrase "a full time licensed captain is employed." One reasonable interpretation is that Serendipity, LLC is required to hire a person whose full-time profession is that of a captain but who only works for Serendipity, LLC part time. The full-time captain could work over forty hours per week as a captain, but only work, say, five hours each week on the Serendipity and forty hours each week as a captain somewhere else. Another reasonable interpretation is that Serendipity, LLC must hire a person to work on the Serendipity exclusively as a full-time captain's job -- as in a typical nine-to-five arrangement. The word "full time" is not defined anywhere in the Policy, which "does not create ambiguity per se," but nevertheless lends support to the conclusion that the Captain Warranty is ambiguous. *See id.*

In the end, though, the fact that the warranty may have been ambiguous does not save Serendipity, LLC because under *any* reasonable interpretation of its text, Serendipity, LLC failed to fulfill its obligations. Under any reasonable interpretation of the Policy, Serendipity, LLC was required to hire a licensed captain either to care for the Serendipity full time, or whose full-time job was as a licensed captain. Plainly, Serendipity, LLC did neither.

Oakley testified in his deposition that he "hired many, many people to work on the boat; but did we ever hire a full-time captain?

No.  The -- the full-time captain was me."   This concession is fatal
to Serendipity, LLC's argument; all agree that Oakley was not a
licensed captain during the relevant period, and Serendipity, LLC
makes no attempt to argue that Oakley himself satisfied the war-
ranty.  Instead, Serendipity, LLC says that Captain Connelly filled
the role.  But Captain Connelly neither worked full time on the
Serendipity nor worked full time as a licensed captain during the
period the Policy was in effect.  It is true that Captain Connelly
submitted an affidavit explaining that he was "always available to
assist in any way [he] c[ould]."  He went on to explain, however,
that he "was paid for [his] services with dinners and attending
cruises with [the Oakleys]."  This is not compensation for full-time
work.  But still more problematic, Captain Connelly disclosed that
he was *retired* from his job as a captain by the time the Oakleys
purchased the Serendipity; he swore in his affidavit that he is "re-
tired, and [doesn't] get to captain vessels on a regular basis, as [he]
once did."  Under even the most charitable reading of the Captain
Warranty, this was not what the Policy required, and the district
court correctly concluded that there had been a breach.

## C.

Our inquiry does not end there, however.  In order to escape
coverage, Lloyd's must prove not only that Serendipity, LLC
breached the Captain Warranty, but also that the breach "increased
the hazard" posed by Hurricane Dorian to the Serendipity.  The
district court concluded that the record "demonstrate[d] that there

is no genuine dispute of fact that the failure to employ a full-time licensed captain did indeed increase the hazard." In support, the district court explained that Serendipity, LLC "produced no evidence to rebut" the testimony of Lloyd's' expert witness, Captain Danti, who concluded that any licensed captain would have driven the Serendipity back to Cape Canaveral before Hurricane Dorian struck the Bahamas. We disagree.

### 1.

Before explaining why a material dispute of fact remains on the issue of hazard, we pause to explain why we believe the argument was properly presented to the district court. "It is well settled that issues not raised in the district court in the first instance are forfeited." *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1152 (11th Cir. 2011). So "if a party hopes to preserve a claim, argument, theory, or defense on appeal, [it] must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1325 (11th Cir. 2012) (citation omitted).

Lloyd's suggests that Serendipity, LLC may have forfeited its argument that the breach did not increase the hazard because it did not "produce any facts to rebut the testimony of Captain Danti that the absence of a full time captain employed for the maintenance and care of the vessel increased the risk or hazard to the vessel" in the district court. Alternatively, Lloyd's suggested at oral argument that Serendipity, LLC forfeited the argument by not

raising it a second time to the district court in response to the district court's order requiring briefing under Rule 56(f). We are not persuaded by either argument.

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc). And we will not require the district court to undertake the proverbial hunt for the Red October submarine in the Atlantic Ocean[1] in order to find a disputed issue of fact in the summary judgment record. But, contrary to the position taken by Lloyd's, we see no need to hunt here.

It was apparent throughout Serendipity, LLC's Motion for Summary Judgment and its Statement of Material Facts that it disputed the testimony in Captain Danti's report. More precisely, it was apparent that Serendipity, LLC disputed a meteorological fact (the Dooley SeaWeather report) that formed the basis of Captain Danti's report -- a meteorological fact of which Captain Danti did not possess any particular expertise. Beginning with the introduction in its Motion for Summary Judgment, Serendipity, LLC explained that

> [O]n August 27, 2019, Hurricane Dorian began forming and was initially predicted to hit Florida. As such,

---

[1] *See* The Hunt for Red October (Paramount Pictures 1990) (based on Tom Clancy, *The Hunt for Red October* (1984)).

Mr. Oakley believed the M/Y Serendipity to be safer
in the Bahamas.  (Exhibit 3 [sic], Combined Weather
Reports[2]).  Further, he believed that it would not be
safe or reasonable to return to Florida and potentially
face the storm in the open sea.

Then, in a section of its Motion for Summary Judgment ti-
tled "Plaintiff Did Not Breach Any Aspect of the Hurricane Plan by
Bringing the Vessel to the Bahamas," Serendipity, LLC claimed
that "[b]ased on the information available at the time, Mr. Oakley
determined that the vessel would be safer in the Bahamas" and that
"[i]t would have been an *unnecessary hazard* to attempt to move
the vessel hours before the Hurricane struck and risk facing the
storm in the open sea."  Any way you read it, this argument cuts
directly to the hazard issue, even though the argument was placed
under the wrong topical heading.

_____

[2] In response to Serendipity, LLC's Motion for Summary Judgment, but not
on appeal, Lloyd's objected to these reports because they "present[] alleged
facts in a manner that would not be admissible at trial" in that they have not
been authenticated by a witness.  Lloyd's argument missed the mark for two
reasons.  First, the reports appear in newspaper articles, and newspaper articles
are self-authenticating.  *See* Fed. R. Evid. 902(6).  And second, even if inadmis-
sible in the form presented, these weather reports are properly considered on
summary judgment because they could easily be reduced to admissible form
at trial.  *See Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1156 n.2 (11th
Cir. 2021).  This Court has explicitly held that this is true with respect to news-
paper articles.  *See Church of Scientology Flag Serv. Org., Inc. v. City of Clear-
water*, 2 F.3d 1514, 1530 (11th Cir. 1993).

In addition, just above the section of Serendipity, LLC's Motion titled "None of the Alleged Breaches by Plaintiff Served to Increase the Insurance Hazard of Defendant Underwriters," -- but still not under the correct topical heading -- Serendipity, LLC pointed out that it "had initially appeared that Florida would be hit more severely by the storm" and attempting to navigate the vessel to Cape Canaveral from the Abacos "could have exposed the vessel and human life to greater risk." In this location, the district court would not have been required to scour the record to find Serendipity, LLC's position on whether any breach increased the hazard.

Most significantly, however, for our purposes, Serendipity, LLC directly disputed Captain Danti's testimony in its Statement of Material Facts, which additionally served as its response to Lloyd's Statement of Material Facts. Paragraph 59 of Lloyd's Statement provides: "This change in mooring location [from Cape Canaveral to the Bahamas], *substantially increased the risk* to the Subject Vessel during the hurricane season. . . ." In turn, ¶ 59 of Serendipity, LLC's response reads this way: "Hurricane Dorian was at that time predicted to hit Cape Canaveral, the primary location for the subject vessel. It wasn't till hours before it hit Paradise Cay, that any prediction said it would hit the Abacos." So, directly in response to Lloyd's claim that Serendipity, LLC's conduct "substantially increased the risk to the Subject Vessel," -- *i.e.*, increased the hazard -- Serendipity, LLC responded that Dorian was not predicted to hit the Abacos until hours before the yacht was destroyed.

The argument continued in ¶ 63 of Serendipity, LLC's State-
ment of Material Facts. There, Serendipity, LLC claimed that "[a]t
th[e] stated time frame [between August 24, 2019 and August 30,
2019], the hurricane was still predicted to hit Florida's coast line
and not yet predicted to hit the Abacos. Trying to relocate the boat
would have been a reckless endeavor."

Then, finally, in ¶ 66 of Serendipity, LLC's Statement of Ma-
terial Facts, Serendipity LLC directly disputed the critical predicate
fact upon which Captain Danti's report relied. That paragraph
summarized, verbatim, some of the testimony of Captain Danti:
"Based on the forecast information obtained by Dooley Sea-
Weather, there is no question that a licensed Captain assigned to
M/Y Serendipity would have made the decision to evacuate." Ser-
endipity, LLC expressly disputed this fact, arguing that it "contra-
dicts the weather reports that existed at that time," challenging the
idea that "personal interpretations by lay people take precedence
over licensed meteorologists," and then specifically referencing the
weather reports in Exhibit 9, which show Hurricane Dorian con-
sistently forecast to hit Cape Canaveral, including on August 30,
2019 -- the day the Serendipity was destroyed.

Moreover, in a footnote in his Report and Recommenda-
tion, the magistrate judge expressly said that he reviewed "the ma-
terials filed in connection with the motions," including Plaintiff's
Statement of Material Facts. He also cited to Plaintiff's Statement
of Material Facts on one occasion in his Report and

Recommendation, strongly suggesting that he was at least aware of the facts averred therein, including those found in ¶¶ 59, 63, and 66. So, in our view, Serendipity, LLC's argument was presented to the district court in its Motion for Summary Judgment and accompanying Statement of Material Facts. And our caselaw cannot be read to require Serendipity, LLC to reraise the same argument the district court rejected a second time in response to the district court's Rule 56(f) order. *See Browning v. AT&T Paradyne*, 120 F.3d 222, 225–26 (11th Cir. 1997) (finding an argument properly preserved when raised on summary judgment before a district court judge, even though the argument was not reraised in subsequent summary judgment briefing before a magistrate judge after the parties consented to magistrate jurisdiction); *cf. Belevich v. Thomas*, 17 F.4th 1048, 1051 n.1 (11th Cir. 2021) (concluding that "[b]ecause the [defendants] adequately presented their non-statutory defenses in their second amended answer and in their opposition to [plaintiff's] motion for a protective order, they have preserved these issues for appeal" even though the arguments were not reraised during summary judgment).

**2.**

At last, we come to the heart of this appeal -- whether a material dispute of fact remains about whether Serendipity, LLC's failure to hire a full-time licensed captain increased the risk to the Serendipity posed by Hurricane Dorian. We conclude that it does.

Under Florida law,

> A breach or violation by the insured of a warranty, con-
> dition, or provision of a wet marine or transportation
> insurance policy, contract of insurance, endorsement,
> or application does not void the policy or contract, or
> constitute a defense to a loss thereon, unless such
> breach or violation increased the hazard by any means
> within the control of the insured.

Fla. Stat. § 627.409(2). "The statute is designed to prevent the in-
surer from avoiding coverage on a technical omission playing no
part in the loss." *Pickett v. Woods*, 404 So. 2d 1152, 1153 (Fla. 5th
DCA 1981). The question of whether an insured increased the haz-
ard is typically a question of fact for the jury. *Pearl Assur. Co. v. S.
Wood Prods. Co.*, 216 F.2d 135, 136 (5th Cir. 1954).[3]

Serendipity, LLC offers five reasons its breach did not in-
crease the hazard:

> 1) two licensed captains were physically present with
> the Serendipity in the days leading up to Dorian hit-
> ting the Abaco; 2) Mr. Oakley was in regular commu-
> nications with Captains McIntosh, Lightbourne and
> Connelly and the Cape Marina in the days and hours
> leading up to Dorian hitting the Abaco, and all

---

[3] Decisions of the former Fifth Circuit issued before October 1, 1981, consti-
tute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*,
661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

determined that it was best to leave the Vessel where
it was; 3) Captains McIntosh and Lightbourne se-
cured the Vessel with assistance from crew, and Mr.
Oakley observed and oversaw the process via live
video camera; 4) Captain Lightbourne stayed in the
Pink Paradise, therefore a licensed Captain **was** with
the Vessel at the time Dorian hit; 5) the suggestion
that anyone, given Dorian's record-breaking unpre-
dictability, changing nature and wind velocity, would
have been able to predict Dorian's path to avoid Do-
rian in the days leading up to August 30 is ludicrous.

Lloyd's does not address any of these arguments directly. Instead,
it claims that Serendipity, LLC offered no evidence to rebut Cap-
tain Danti's testimony that Serendipity, LLC's failure to employ a
full-time licensed captain increased the hazard to the vessel. The
district court agreed with the position taken by Lloyd's; it found
that Serendipity, LLC "ha[d] produced no evidence to rebut [Cap-
tain Danti's] testimony," making the record "clear that [Serendip-
ity, LLC]'s breach of the Captain Warranty increased the hazard
within the control of the insured."

In our view, however, both Lloyd's and the district court
failed to consider the ample evidence that we have already cited in
the record creating a genuine dispute of fact about whether Seren-
dipity, LLC's breach increased the hazard -- that Hurricane Dorian
was consistently predicted to hit Central Florida, and that it would

have been "an unnecessary hazard to attempt to move the vessel"
on account of Hurricane Dorian's strength and unpredictability.
Serendipity, LLC supported this claim by attaching news articles
and weather reports covering Hurricane Dorian's path as an exhibit
to its Motion. And, again, Serendipity, LLC also clearly disputed
Captain Danti's testimony in its Statement of Material Facts. It
wrote, in no uncertain terms, that Captain Danti's testimony "con-
tradicts the weather reports that existed at that time" and cited Ex-
hibit 9 in support. This evidence plainly contradicts Captain
Danti's testimony. We therefore cannot conclude, as the district
court did, that Serendipity, LLC "produced no evidence to rebut
[Captain Danti's] testimony."

A jury may well credit Captain Danti's testimony over the
weather reports offered by Serendipity, LLC. But that is a credibil-
ity determination for the jury to make. The district court erred in
granting summary judgment for Lloyd's when a disputed question
of material fact remains about whether Serendipity, LLC's breach
of the Captain Warranty increased the hazard posed to the Seren-
dipity by Hurricane Dorian.

Accordingly, we **REVERSE** the district court's order grant-
ing final summary judgment in favor of Lloyd's and **REMAND** this
case to the district court for further proceedings.